1 | JESS C. ARNDELL and
2 | SUZANNE K. ARNDELL
   | 14060 South Shore Drive
3 | Truckee, California  96161
   | (775) 835-1995
4 | Plaintiffs – Pro se

√ FILED          _____ RECEIVED
_____ ENTERED   _____ SERVED ON
COUNSEL/PARTIES OF RECORD

JUL - 1 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

JESS C. ARNDELL and
SUZANNE K. ARNDELL,

           Plaintiffs,

vs.

ROBISON, BELAUSTEGUI, SHARP & LOW, a
Professional Corporation,  KENT R. ROBISON,
THOMAS L. BELAUSTEGUI, F. DeARMOND
SHARP, KEEGAN G. LOW, MARK G. SIMONS,
And JOHN DOES I-V,

           Defendants.

Case No.  3:11-CV-00469

**COMPLAINT
JURY DEMAND**

    **COME NOW,** Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL,

individually, pro se, and for their claims against the Defendants, ROBISON,

BELAUSTEGUI, SHARP & LOW, a Professional Corporation,  KENT R. ROBISON,

THOMAS L. BELAUSTEGUI, F. DeARMOND SHARP, KEEGAN G. LOW, MARK G.

SIMONS and JOHN DOES I–V, state as follows:

## PARTIES

    1. Plaintiffs, JESS C. ARNDELL (hereinafter ARNDELL) and SUZANNE K.

1

Paid Amt $350⁰⁰ Date 7-1-11
Receipt # NVRNO524 Initials mL

ARNDELL, are adult individuals, husband and wife, residing in California at 14060 South Shore Drive, Truckee, California 96161.

2.  Plaintiffs are assignees of all claims of HIDDEN MEADOWS COMPANY a/k/a HIDDEN MEADOWS, LTD a/k/a HIDDEN MEADOWS, LLC a/k/a HIDDEN MEADOWS CORPORATION (all hereinafter HMC) and JESS ARNDELL CONSTRUCTION CO., INC. a/k/a JESS ARNDELL CONSTRUCTION COMPANY, INC. a/k/a JESS ARNDELL CONSTRUCTION COMPANY (all hereinafter JACC) which any of said entities ever had, may currently have or in the future may ever have against any and all of the Defendants.

3.  Defendant, ROBISON, BELAUSTEGUI, SHARP & LOW, a Professional Corporation (hereinafter ROBISON LAW FIRM or RLF), is a Reno, Nevada law firm and resident located at 71 Washington Street, Reno, Nevada 89503.  ROBISON LAW FIRM members and employees are engaged in the practice of law in Reno, Washoe County, Nevada.

4.  Defendant, KENT R. ROBISON, is an individual who resides in Nevada and practices law in Nevada with RLF.

5.  Defendant, THOMAS L. BELAUSTEGUI, is an individual who resides in Nevada and practices law in Nevada with RLF.

6.  Defendant, F. DeARMOND SHARP, is an individual who resides in Nevada and practices law in Nevada with RLF.

7.  Defendant, KEEGAN G. LOW, is an individual who resides in Nevada and practices law with RLF.

8.  Defendant, MARK G. SIMONS, is an individual who resides in Nevada and practices law in Nevada with RLF.

9.  Defendants, JOHN DOES I – V, are individuals who reside in Nevada and who may

2

have aided and abetted other defendants in the actions which form the basis for the Plaintiffs' various complaints as set forth herein below and thereby may be liable to Plaintiffs as discovery may reveal.

### JURISDICTION AND VENUE

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C.A. Sec.1332 because the matter in controversy exceeds Seventy-five Thousand Dollars  ($75,000.00) exclusive of interest and costs and that complete diversity of citizenship exists between the Plaintiffs who are both California residents, and all Defendants who are Nevada residents.

11. Venue is proper in this Court because the acts giving rise to the matters complained of herein occurred in Washoe County, Nevada.

### FACTS GIVING RISE TO PLAINTIFFS' CAUSES OF ACTION

12. From December, 2000 to the date of the filing of this complaint, RLF represented JESS ARNDELL, individually, HMC, and JACC in various matters, including, but not limited to the real estate project known as Hidden Meadows Housing Development.  The development consisted of 101 single family homes and was completed by HMC and JACC in 2004.

13. A civil engineering firm called STANTEC a/k/a SEA (both hereinafter SEA) acted as the civil engineer for the first phases of construction.  SUMMIT ENGINEERING, INC. (hereinafter SUMMIT) then took over due to the defective performance by SEA.  During construction, the county forbade the import of fill soil for the project and therefore, SEA recommended that HMC and JACC utilize a borrow site at the nearby slough located on the project to obtain soil to accomplish the original mass grading.  This site eventually became a 17-acre retention pond directly adjacent to the Hidden Meadows community.

14. During construction it became apparent there was insufficient soil quantity and quality to complete construction as designed by SEA. As a result, HMC filed suit against SEA (hereinafter DIRT SUIT), over these soil deficiencies. SEA's flawed analysis resulted in insufficient quantities and quality of soil in the borrow site to comply with the geotechnical report recommendations. To cover up for their fraud, SEA's recommendation to ARNDELL was to dig deeper into the borrow site to obtain more soil. This resulted in the creation of an unplanned 17-acre retention pond where the original plans called for a multi-purpose park. Also, the soil recovered from the borrow site was not suitable for fill to support some of the development's housing foundations. During the course of the litigation it became evident that SEA was well aware of the deficiencies in their report to HMC, but intentionally concealed this information. In retrospect, it was clear from the outset that the Hidden Meadows project should never have been built, and in fact never would have been attempted by HMC had these deficiencies been timely disclosed to JESS ARNDELL and his entities, HMC and JACC.

15. As a direct result of the fraudulent conduct of SEA, HMC incurred over Eleven Million Dollars ($11,000,000.00) in debt to JACC. JACC expended these sums on behalf of HMC in attempting to cure the deficiencies of SEA's fraudulent geotechnical report. JACC had no choice but to bill these costs to HMC. RLF filed the DIRT SUIT on behalf HMC against SEA, seeking recovery of the Eleven Million Dollars ($11,000,000.00) HMC now owed JACC. All the while, RLF continued to represent and advise HMC, JACC and JESS ARNDELL personally, all at the same time, as RLF had always done prior to filing suit on behalf of HMC.

16. MARK SIMONS was lead counsel, with supervisory assistance from KENT ROBISON. ARNDELL was advised by them that he had a strong case against SEA,

and that in fact, it was a "Slam Dunk".  The damages were easily verified.  The fraud was

obvious because the original geotechnical report called for a multi-purpose park to exist

where the large 17-acre retention pond now sits.  Further, SEA, as the civil engineer on the

project failed to make recommendations such as installing area drains on each lot which

would have mitigated their earlier fraudulent geotechnical report. The result of this failure

was to cause a subsequent lawsuit to be filed by seventy-one (71) homeowners (hereinafter

the DEFECT SUIT) who experienced standing water in their crawl spaces, as well as

problems related to the quality of soils ordered by SEA to be used in construction.  This

litigation eventually cost JESS ARNDELL and his entities an additional Ten Million Dollars

($10,000,000.00).

17.  Two days before the trial against SEA was scheduled to commence on January 4,

2003, a Settlement Conference was held.  ARNDELL and his daughter, KIM ARNDELL,

HMC's Financial Manager, attended.  ARNDELL and his daughter were shocked when their

attorney, SIMONS, recommended that SEA's first offer of Seventy Thousand Dollars

($70,000.00) be accepted.  SIMONS told ARNDELL that he must accept the offer because

ARNDELL owed RLF Ninety Thousand Dollars ($90,000.00) in overdue attorney's fees.

SIMONS further stated that RLF was not prepared for trial, and that ARNDELL needed to

come up with an additional Two Hundred Fifty Thousand Dollars ($250,000.00) immediately

in order to cover RLF's attorney's fees to try the case.  Eventually, SEA increased their offer

to One Million Four Hundred Fifty Thousand Dollars  ($1,450,000.00).  ARNDELL

continued to refuse even that amount because he knew it meant certain bankruptcy for himself

personally as well as HMC and JACC.  RLF persisted in applying inappropriate pressure,

including at one point having ROBISON call SUZANNE ARDNELL without JESS

ARDNELL'S permission, in order to improperly influence JESS ARDNELL'S business judgment.

18. The Settlement Conference ended with no resolution to ARDNELL'S understanding, although SIMONS was still strongly recommending acceptance of the One Million Four Hundred Fifty Thousand Dollars ($1,450,000.00) amount.  Approximately thirty (30) days later ARDNELL was summoned to the RLF office.  SIMONS and ROBISON informed ARDNELL that he must accept the terms of the agreement because SIMONS and ROBISON had already informed SEA's counsel that ARDNELL had accepted the One Million Four Hundred Fifty Thousand Dollars ($1,450,000.00) amount at the Settlement Conference thirty (30) days prior.  They repeated their demand for past and future attorney's fees.  They also stated that the case could no longer be tried because it had been taken off the calendar when the settlement had been agreed to between Counsel, even though JESS ARDNELL had never agreed to it.  They reiterated they were not prepared for trial.

19.  ARDNELL was also informed at this meeting that even if he obtained a large judgment, SEA would appeal and it would take years to obtain the money.  Furthermore, there was no explanation as to why RLF was not prepared for trial, the odds for success versus failure if the case went to trial, or the strengths and weaknesses of SEA's defenses. Nor did these attorneys answer ARDNELL'S direct questions related to the possible award of post judgment interest or attorney's fees in the event of an appeal.

20.  At this meeting, ARDNELL was first informed that he must agree to an additional settlement condition.  He was expected to agree to an indemnification by HMC of any future claims that might be asserted by any party against SEA related to the Hidden Meadows development.  RLF represented to ARDNELL that this would not harm HMC, JACC or

ARDNELL personally because HMC was judgment proof and the indemnification would

apply to HMC only.  Again, undue influence and inappropriate pressure were used to obtain

ARDNELL'S agreement to this additional condition. As an inducement to obtain

ARDNELL'S consent, SIMONS represented that he would defend against its application to

JACC or ARDNELL personally. At that time, RLF and ARDNELL were aware of pending

litigation by various homeowners in the development due to design defects caused by SEA's

fraud in the geotechnical report and ARDNELL'S concern that he preserve any and all cross

claims by JACC, HMC and himself personally, against SEA in the pending DEFECT SUIT.

21.  The DIRT SUIT settlement was signed on February 26, 2003.  RLF, through

SIMONS,  continued to represent ARDNELL, JACC and HMC, apparently without

cognizance of the blatant conflict of interest in doing so.  By November, 2003, certain

homeowners had served notice pursuant to NRS Chapter 40 of defects in three (3) residences,

against HMC and JACC.  Eventually, seventy-one (71) homeowners filed similar suits.

During the litigation, the Judge ruled that ARDNELL, JACC, and HMC were alter egos of

one another.  SIMONS surprisingly provided in court testimony that supported this finding.

Thus, the indemnification agreement precluded ARDNELL and JACC from pursuing cross

claims against SEA in the DEFECT SUIT, even though SEA was the real party at fault.

22.  The direct result of the alter ego ruling and indemnification ruling was that JACC

and ARNDELL personally paid out over Five Million Dollars ($5,000,000.00) in claims that

should have been paid by SEA.  JACC's financial stability was so severely damaged that its

Contractor's License was revoked.  JACC is now insolvent.  JESS ARNDELL'S income has

gone from approximately Two Hundred Thousand Dollars ($200,000.00) annually to virtually

nothing.  JESS and SUZANNE ARNDELL have suffered severe physical and emotional

7

distress as a direct result of this loss of income, all of which was directly caused by the errors and omissions of RLF including but not limited to ROBISON and SIMONS.

23.  RLF had a serious conflict of interest when they represented all three ARNDELL entities in the DIRT SUIT litigation.  JACC was a creditor of HMC.  JACC was a financially viable construction company with a substantial net worth.  HMC was bankrupt and owed JACC millions of dollars.  By settling HMC's claim against SEA for less than ten percent (10%) of its actual worth,  RLF jeopardized JACC's financial stability and eventually brought about its insolvency.  RLF should have withdrawn from the joint representation of HMC, JACC and ARNDELL personally, well before the DIRT SUIT settlement negotiations commenced.  In addition, the facts strongly suggest that RLF was self-dealing at the Settlement Conference and only wished to recover sufficient money to get their own attorney's fees paid, regardless of the financial ruin such a meager settlement would cause for their clients.

24.  RLF settled HMC's claims against SEA at the Settlement Conference without authorization from ARNDELL.  Thirty (30) days later ARNDELL was unequivocally informed of this unauthorized action by RFL attorneys in RLF's offices.  At this point, RLF had a duty to withdraw as Counsel for ARNDELL, HMC and JACC, and advise them to seek other and separate Counsel.  Instead RLF used undue influence and misrepresentations to "bully" ARNDELL into accepting the One Million Four Hundred Fifty Thousand Dollars ($1,450,000.00) settlement and concealed their own gross negligence, malfeasance, misfeasance and self-dealing.

25.  RLF attorneys breached their duty to use reasonable skill and diligence in preparing the DIRT SUIT for trial.  This was a liquidated claim with clear liability and with a defendant

8

capable of paying the full provable claim of Eleven Million Dollars ($11,000,000.00). The entire financial future of ARNDELL and his companies had been placed in the hands of RLF. Up to a few days before Trial ARNDELL had been informed that the case was going well. He was justifiably shocked to have his attorneys recommend acceptance of the Defendants' opening offer of Seventy Thousand Dollars ($70,000.00). This conduct is malpractice *per se.* Numerous inappropriate actions and misrepresentations were used at the Conference to exert undue influence on ARNDELL in order to obtain his consent to a disastrous and ill-advised settlement agreement.

26. After RLF had approved the settlement agreement without ARNDELL'S consent, they aggravated the situation by agreeing to provide SEA with an indemnification provision. Again, no consent was obtained from ARNDELL at the time this was agreed to by RLF and SEA's Counsel. The terms of the indemnification agreement required HMC to hold SEA harmless from all future litigation against SEA associated in any way with the Hidden Meadows Development. At the time, it was clear that litigation was about to be commenced by various homeowners for construction defects caused by SEA's fraudulent geotechnical plan. Ultimately, misrepresentations as to the effect of this indemnification agreement and RLF's willingness to defend it in Court were used to get ARNDELL'S signature on the settlement agreement.

27. Eventually, seventy-one (71) homeowners filed suit for water accumulating in their crawl spaces as well as several claims for house settlement defects. Contrary to what RLF represented to ARNDELL, after the adverse alter ego ruling, in part aided by the direct testimony of SIMONS, the indemnification agreement resulted in the loss of all cross claims by ARNDELL, HMC and JACC against SEA. Thus, ARNDELL and his entities were forced

to pay over Five Million Dollars ($5,000,000.00) in attorney's fees and damages as a direct result of RLF's malfeasance and misrepresentations.

28. Despite all of the serious, continuing conflicts of interest described above, RLF continued to represent ARNDELL and his entities with similar negative results to the present day. Not once during this period did RLF disclose their misconduct in any regard, or suggest that ARNDELL, HMC and JACC obtain other and separate Counsel. Nor did they recommend ARNDELL obtain a second opinion regarding the ethicality or competency of their advice. It was only after ARNDELL, on his own initiative, decided to consult with independent Counsel that he had any understanding of the egregious conduct of RLF during almost the entire course of his attorney-client relationship with them.

29. ARNDELL has requested copies of his files from RLF on numerous occasions. He has requested an accounting for attorney's fees he paid personally, and fees paid by various insurers to see if double payments occurred. All requests have been refused.

**COUNT I**

**BREACH OF FIDUCIARY DUTY**

30. Plaintiffs incorporate by reference herein, all statements and allegations in Paragraphs 1 through 29 as if set forth in full herein.

31. Defendants' acts and omissions set forth in said Paragraphs 1 through 29 constitute complete and total breaches of their fiduciary duties to Plaintiffs.

32. As a result of said breaches of fiduciary duty, Plaintiffs have been injured as set forth in Paragraphs 1 through 29.

33. The breaches of fiduciary duty described herein were the proximate causes of all damages sustained by Plaintiffs.

34. Plaintiffs have suffered, among other damages, all items of damage recoverable by statute, the common law or otherwise, including but not limited to past, present and future financial ruination, past, present and future mental and physical anguish, lost business opportunities, loss of business licenses and loss of the lifestyle to which they had become accustomed before Defendants breached their fiduciary duties.

**WHEREFORE**, Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally, pray for judgment against all Defendants for such actual damages as are fair and reasonable in excess of Seventy-five Thousand Dollars ($75,000.00) for and pertaining to the damages suffered due to each of said Defendants' breaches of fiduciary duty owed to Plaintiffs as well as Plaintiffs' costs expended herein, together with interest (including pre-judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.

## COUNT II

## COMMON LAW NEGLIGENCE, LACK OF SKILL AND DILIGENCE AND FAILURE TO USE REASONABLE SKILL AND DILIGENCE

35. Plaintiffs incorporate by reference herein, all statements and allegations in Paragraphs 1 through 29 as if set forth in full herein.

36. Defendants' acts and omissions set forth in said Paragraphs 1 through 29 constitute common law negligence and demonstrate a lack of skill and diligence or a complete and total failure to use reasonable skill and diligence in their representation of Plaintiffs.

37. Defendants had a duty of care in their representation of Plaintiffs to use reasonable skill and diligence.

38. Defendants were negligent and breached their duties of care to exercise skill and

11

diligence on behalf of Plaintiffs, or did not have the requisite skill and diligence to represent Plaintiffs adequately.

39.  Said breaches of the duties of care to not be negligent and to exercise skill and diligence on behalf of Plaintiffs were the proximate causes of all damages that Plaintiffs claim herein.

40.  As a result of said Defendants' negligence and failure to use reasonable skill and diligence on Plaintiffs' behalf, Plaintiffs have been injured as set forth in Paragraphs 1 through 29.

41.  Plaintiffs have suffered, among other damages, all items of damage recoverable by statute, the common law or otherwise, including but not limited to, past, present and future financial ruination, past, present and future mental and physical anguish, lost business opportunities, loss of business licenses and loss of the lifestyle to which they had become accustomed before Defendants failed to use reasonable skill and diligence in representing Plaintiffs without negligence.

**WHEREFORE**, Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally, pray for judgment against all Defendants for such actual damages as are fair and reasonable in excess of Seventy-five Thousand Dollars ($75,000.00) for and pertaining to the damages suffered due to each of said Defendants' negligence and failure to use reasonable skill and diligence in representing Plaintiffs, as well as Plaintiffs' costs expended herein, together with interest (including pre- judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.

## COUNT III

## SELF-DEALING

12

42. Plaintiffs incorporate by reference herein, all statements and allegations in Paragraphs 1 through 29 as if set forth in full herein.

43. Defendants' acts and omissions set forth in said Paragraphs 1 through 29 constitute complete and total breaches of their ethical duty not to engage in self-dealing.

44. As a result of said self-dealing by Defendants, Plaintiffs have been injured as set forth in Paragraphs 1 through 29.

45. The acts of self-dealing described herein were the proximate causes of all damages sustained by Plaintiffs.

46. Plaintiffs have suffered, among other damages, all items of damage recoverable by statute, the common law or otherwise, including but not limited to, past, present and future financial ruination, past, present and future mental and physical anguish, lost business opportunities, loss of business licenses and loss of the lifestyle to which they had become accustomed before Defendants engaged in self-dealing.

**WHEREFORE**, Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally, pray for judgment against all Defendants for such actual damages as are fair and reasonable in excess of Seventy-five Thousand Dollars ($75,000.00) for and pertaining to the damages suffered due to each of said Defendants' acts of self-dealing as well as Plaintiffs' costs expended herein, together with interest (including pre-judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.

<u>**COUNT IV**</u>

<u>**MISREPRESENTATION**</u>

47. Plaintiffs incorporate by reference herein, all statements and allegations in

Paragraphs 1 through 29 as if set forth in full herein.

48.  Defendants' acts and omissions set forth in said Paragraphs 1 through 29 constitute a continuous course of misrepresentation of Plaintiffs throughout the entire time Defendants represented Plaintiffs.

49.  As a result of said misrepresentations, Plaintiffs have been injured as set forth in Paragraphs 1 through 29.

50.  The misrepresentations described herein were material and the proximate causes of all damages sustained by Plaintiffs.

51.  Plaintiffs have suffered, among other damages, all items of damage recoverable by statute, the common law or otherwise, including but not limited to, past, present and future financial ruination, past, present and future mental and physical anguish, lost business opportunities, loss of business licenses and loss of the lifestyle to which they had become accustomed before Defendants made such misrepresentations.

**WHEREFORE**, Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally, pray for judgment against all Defendants for such actual damages as are fair and reasonable in excess of Seventy-five Thousand Dollars ($75,000.00) for and pertaining to the damages suffered due to each of said Defendants' misrepresentations to Plaintiffs as well as Plaintiffs' costs expended herein, together with interest (including pre-judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.

## COUNT V

## UNDUE INFLUENCE

52.  Plaintiffs incorporate by reference herein, all statements and allegations in

14

Paragraphs 1 through 29 as if set forth in full herein.

53. Defendants' acts and omissions set forth in said Paragraphs 1 through 29 constitute a continuous course of undue influence on Plaintiffs throughout the entire time Defendants represented Plaintiffs.

54. As a result of said undue influence, Plaintiffs have been injured as set forth in Paragraphs 1 through 29.

55. The acts of undue influence described herein were material and the proximate causes of all damages sustained by Plaintiffs.

56. Plaintiffs have suffered, among other damages, all items of damage recoverable by statute, the common law or otherwise, including but not limited to, past, present and future financial ruination, past, present and future mental and physical anguish, lost business opportunities, loss of business licenses and loss of the lifestyle to which they had become accustomed before Defendants engaged in such undue influence.

**WHEREFORE,** Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally, pray for judgment against all Defendants for such actual damages as are fair and reasonable in excess of Seventy-five Thousand Dollars ($75,000.00) for and pertaining to the damages suffered due to each of said Defendants' acts of undue influence on Plaintiffs as well as Plaintiffs' costs expended herein, together with interest (including pre-judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.

<u>**COUNT VI**</u>

<u>**FRAUD**</u>

57. Plaintiffs incorporate by reference herein, all statements and allegations in

Paragraphs 1 through 29 as if set forth in full herein.

58. Defendants' acts and omissions set forth in said Paragraphs 1 through 29 constitute a continuous course of fraud on the Plaintiffs throughout the entire time Defendants represented Plaintiffs.

59. As a result of said acts of fraud, Plaintiffs have been injured as set forth in Paragraphs 1 through 29.

60. The acts of fraud described herein were material and the proximate causes of all damages sustained by Plaintiffs.

61. Plaintiffs have suffered, among other damages, all items of damage recoverable by statute, the common law or otherwise, including but not limited to, past, present and future financial ruination, past, present and future mental and physical anguish, lost business opportunities, loss of business licenses and loss of the lifestyle to which they had become accustomed before Defendants engaged in such acts of fraud.

**WHEREFORE,** Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally, pray for judgment against all Defendants for such actual damages as are fair and reasonable in excess of Seventy-five Thousand Dollars ($75,000.00) for and pertaining to the damages suffered due to each of said Defendants' acts of fraud on Plaintiffs as well as Plaintiffs' costs expended herein, together with interest (including pre-judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.

### COUNT VII

### INTENTIONAL HARM, WILLFUL NEGLECT AND UNETHICAL CONDUCT DUE TO DEFENDANTS' REFUSAL TO COMMUNICATE WITH PLAINTIFFS, AND

## PROVIDE REQUESTED DOCUMENTS AND AN ACCOUNTING

62. Plaintiffs incorporate by reference herein, all statements and allegations in Paragraphs 1 through 29 as if set forth in full herein.

63. Over the last year-and-one-half, despite repeated requests for the same from Defendants, Defendants have repeatedly refused to communicate with Plaintiffs or provide them with their statutorily mandated copy of all files handled by Defendants for Plaintiffs. What replies Defendants have made have been extremely limited, arrogant and evasive.

64. Defendants have also, despite repeated requests by Plaintiffs, refused to give them an accounting for all financial information on each of their files or for information as to what funds Defendants received from various insurance companies and whether Defendants billed Plaintiffs for work done for them despite having been previously paid for said work by Plaintiffs' insurance companies.

65. As such, the acts and omissions described in this count constitute a continuous course of intentional harm, willful neglect of Defendants' duties to Plaintiffs as well as unethical conduct.

66. As a result of said intentional harm, willful neglect and unethical conduct, Plaintiffs have been injured as set forth in Paragraphs 1 through 29.

67. The acts of intentional harm, willful neglect and unethical conduct described herein were material and the proximate causes of all damages sustained by Plaintiffs.

68. Plaintiffs have suffered, among other damages, all items of damage recoverable by statute, the common law or otherwise, including but not limited to, past, present and future financial ruination, past, present and future mental and physical anguish, lost business opportunities, loss of business licenses and loss of the lifestyle to which they had become

accustomed before Defendants engaged in such acts of intentional harm, willful neglect and unethical conduct.

**WHEREFORE,** Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally, pray for judgment against all Defendants for such actual damages as are fair and reasonable in excess of Seventy-five Thousand Dollars ($75,000.00) for and pertaining to the damages suffered due to each of said Defendants' acts of intentional harm, willful neglect and unethical conduct to Plaintiffs as well as Plaintiffs' costs expended herein, together with interest (including pre-judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.  Further, Plaintiffs pray for an accounting of all matters handled by Defendants for them.

## COUNT VIII

## ABANDONMENT

69.  Plaintiffs incorporate by reference herein, all statements and allegations in Paragraphs 1 through 29 and 62 through 68 as if set forth in full herein.

70.  Defendants acts and omissions set forth in said Paragraphs 1 through 29 and 62 through 68 constitute a continuous course of abandonment of the Plaintiffs by said Defendants throughout the entire time Defendants represented Plaintiffs.

71. As a result of said acts of abandonment, Plaintiffs have been injured as set forth in Paragraphs 1 through 29.

72.  The acts of abandonment described herein were material and the proximate causes of all damages sustained by Plaintiffs.

73.  Plaintiffs have suffered, among other damages, all items of damage recoverable by statute, the common law or otherwise, including but not limited to, past, present and future

financial ruination, past, present and future mental and physical anguish, lost business opportunities, loss of business licenses and loss of the lifestyle to which they had become accustomed before Defendants engaged in such acts of abandonment.

**WHEREFORE,** Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally, pray for judgment against all Defendants for such actual damages as are fair and reasonable in excess of Seventy-five Thousand Dollars ($75,000.00) for and pertaining to the damages suffered due to each of said Defendants' acts of abandonment of Plaintiffs as well as Plaintiffs' costs expended herein, together with interest (including pre-judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.

**COUNT IX**

**SETTLING LITIGATION WITHOUT CLIENTS' AUTHORITY**

74. Plaintiffs incorporate by reference herein, all statements and allegations in Paragraphs 1 through 29 as if set forth in full herein.

75. Defendants acts and omissions set forth in said paragraphs 1 through 29 regarding the DIRT SUIT constitute a continuous course of settling litigation without the Plaintiffs' authority or consent.

76. As a result of said course of conduct, Plaintiffs have been injured as set forth in Paragraphs 1 through 29.

77. The acts and course of conduct described herein were material and the proximate causes of all damages sustained by Plaintiffs.

78. Plaintiffs have suffered, among other damages, all items of damage recoverable by statute, the common law or otherwise, including but not limited to, past, present and future

financial ruination, past, present and future mental and physical anguish, lost business opportunities, loss of business licenses and loss of the lifestyle to which they had become accustomed before Defendants engaged in such acts and course of conduct in settling litigation without Plaintiffs' authority or consent.

**WHEREFORE,** Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally, pray for judgment against all Defendants for such actual damages as are fair and reasonable in excess of Seventy-five Thousand Dollars ($75,000.00) for and pertaining to the damages suffered due to each of said Defendants' acts and course of conduct in settling litigation without Plaintiffs' authority or consent as well as Plaintiffs' costs expended herein, together with interest (including pre-judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.

## COUNT X

## EXEMPLARY DAMAGES

79.  Plaintiffs incorporate by reference herein, all statements and allegations in Paragraphs 1 through 78 as if set forth in full herein.

80.  The acts and omissions of Defendants as set forth in said Paragraphs 1 through 78 constitutes such wanton, reckless, egregious, willful, malevolent and intentional conduct so as to warrant imposition of exemplary damages.

**WHEREFORE,** Plaintiffs, JESS C. ARNDELL and SUZANNE K. ARNDELL, jointly and severally pray that should the jury, after awarding Plaintiffs compensatory damages, determine that any of the Defendants' conduct was so wanton, reckless, egregious, willful, malevolent or intentional so as to warrant an award of exemplary damages, that the Court direct the jury to make an award of such damages, as well as Plaintiffs' costs expended

herein, together with interest (including pre-judgment interest), attorney's fees and for such other and further relief as the Court deems just and equitable in the premises.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury of all issues so triable.

**RESPECTFULLY SUBMITTED THIS**   _7/1/2011_ day of July, 2011.


JESS C. ARNDELL
Plaintiff – Pro se


SUZANNE K. ARNDELL
Plaintiff – Pro se

**VERIFICATION**

STATE OF NEVADA    )
                      ) ss.
COUNTY OF WASHOE  )

      JESS C. ARNDELL, under penalties of perjury being first duly sworn, deposes and says: That he is the Plaintiff in the above-entitled action, and has read the COMPLAINT, that the same is true of his own knowledge, except for those matters therein contained stated upon information and belief, and as to those matters he believes it to be true.

JESS C. ARNDELL

SUBSCRIBED and SWORN to before me this ___ day of July, 2011.

NOTARY PUBLIC

SANDRA R. DESILVA
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 99-7779-2
MY APPT. EXPIRES AUG. 29, 2011

**ACKNOWLEDGMENT**

STATE OF NEVADA    )
                      ) ss
COUNTY OF WASHOE  )

      On this ___ day of July, 2011, personally appeared before me, JESS C. ARNDELL, proven to me to be the person whose name is subscribed to the above instrument, and who acknowledged to me that he executed the foregoing COMPLAINT.

NOTARY PUBLIC

SANDRA R. DESILVA
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 99-7779-2
MY APPT. EXPIRES AUG. 29, 2011

22

1

2  **VERIFICATION**

3

STATE OF NEVADA       )

4                                        )  ss.

COUNTY OF WASHOE  )

5

6          SUZANNE K. ARNDELL, under penalties of perjury being first duly sworn, deposes

7  and says: That she is the Plaintiff in the above-entitled action, and has read the COMPLAINT,

8  that the same is true of her own knowledge, except for those matters therein contained stated

9

10  upon information and belief, and as to those matters she believes it to be true.

11

12

13                                                                SUZANNE K. ARNDELL

SUBSCRIBED and SWORN to before me

14

this____day of July, 2011.

15

| SANDRA R. DESILVA |
| NOTARY PUBLIC |
| STATE OF NEVADA |
| APPT. No. 99-7779-2 |
| MY APPT. EXPIRES AUG. 29, 2011 |

16

17  NOTARY PUBLIC

18                                        **ACKNOWLEDGMENT**

19

STATE OF NEVADA       )

20                                        )  ss

COUNTY OF WASHOE  )

21

22          On this____day of July, 2011, personally appeared before me, SUZANNE

23  K. ARNDELL, proven to me to be the person whose name is subscribed to the above

24  instrument, and who acknowledged to me that she executed the foregoing COMPLAINT.

25

26  NOTARY PUBLIC

| SANDRA R. DESILVA |
| NOTARY PUBLIC |
| STATE OF NEVADA |
| APPT. No. 99-7779-2 |
| MY APPT. EXPIRES AUG. 29, 2011 |

27

28

23