1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JESS C. ARNDELL and SUZANNE K.
ARNDELL,                                                )
                                                                  )
                    Plaintiffs,                             )
                                                                  )            3:11-cv-469-RCJ-VPC
          v.                                                  )
                                                                  )            **ORDER**
                                                                  )
ROBISON, BELAUSTEGUI, SHARP & LOW,)
a Professional Corporation, et al.,                )
                                                                  )
                    Defendants.                          )
                                                                  )
_____)

          This is a legal malpractice action which Jess C. Arndell ("Arndell") and his wife,

Suzanne K. Arndell, (collectively "Plaintiffs") brought against Defendants Robison,

Belaustegui, Sharp & Low, a Professional Corporation ("RBSL"); Kent R. Robison ("Robison");

Mark G. Simons ("Simons"); Thomas L. Belaustegui; F. DeArmond Sharp; and Keegan G.

Low, (collectively "Defendants").  Plaintiffs' Amended Complaint (#16) contains three counts

against Defendants: (1) legal malpractice, (2) legal malpractice with a request for an

accounting, and (3) exemplary damages.  Presently before the Court is Defendants' Motion

to Dismiss Based Upon N.R.S. § 11.207 (#17), the Nevada statute of limitations for legal

malpractice.

          For the following reasons, the Court GRANTS Defendants' Motion to Dismiss Based

Upon N.R.S. § 11.207 (#17) as to Count One (legal malpractice), with prejudice.  Additionally,

the Court DISMISSES Counts Two (legal malpractice with a request for an accounting) and

Three (exemplary damages), without leave to amend, based upon the Court's prior order

requiring Plaintiffs to amend their Complaint to present <u>one</u> omnibus claim for legal

1   malpractice and to treat exemplary damages as a form of relief, not a cause of action.

2                                            **BACKGROUND**

3   **I.     Procedural History**

4           On July 1, 2011, Plaintiffs filed a Complaint asserting ten separate claims[1] against

5   Defendants, all of which stemmed from general allegations that Defendants committed legal

6   malpractice in the course of representing Plaintiffs.  (*See* Compl. (#1)).  In response,

7   Defendants filed a Motion to Dismiss or, in the Alternative, Motion to Strike Plaintiffs'

8   Duplicative Claims.  (*See* Mot. to Dismiss/Strike (#8)).  That motion sought to consolidate all

9   ten counts in Plaintiffs' Complaint into a single legal malpractice claim.  (*Id.* at 5-7).  The Court

10  agreed with Defendants and ordered Plaintiffs to file an Amended Complaint which

11  consolidated all substantive claims into one omnibus legal malpractice claim.  (Order (#15)

12  at 5-6).  The Court also ordered Plaintiffs to plead exemplary damages as relief sought and

13  not as a separate cause of action.  (*Id.* at 5).

14          Plaintiffs subsequently amended their Complaint and filed it with the Court on May 30,

15  2012.[2]  (*See* Am. Compl. (#16)).  On June 13, 2012, Defendants filed their Motion to Dismiss

16  Based Upon N.R.S. § 11.207, which argues that the relevant statute of limitations bars

17  Plaintiffs' claims.  (Mot. to Dismiss (#17) at 2-3).  Plaintiffs filed their written response to

18  Defendants' Motion to Dismiss on June 29, 2012.  (*See* Response to Mot. to Dismiss (#20)).

19

20          [1] These claims include: (1) breach of fiduciary duty, (2) common law negligence, lack

21  of skill and diligence, and failure to use reasonable skill and diligence, (3) self-dealing, (4)

22  misrepresentation, (5) undue influence, (6) fraud, (7) intentional harm, willful neglect, and

23  unethical conduct due to Defendants' refusal to communicate with Plaintiffs, and provide

24  requested documents and an accounting, (8) abandonment, (9) settling litigation without

25  clients' authority, and (10) exemplary damages.  (Compl. (#1) at ¶¶ 30-80).

26          [2] The Amended Complaint submitted on May 30, 2012 was not properly scanned and

27  several pages were missing from the document.  A corrected image of the Amended

28  Complaint was later filed on June 27, 2012.  (Notice of Corrected Image/Document (#19)).

                                                   2

1    Defendants submitted their reply on July 9, 2012, and the Court heard oral argument on

2    August 20, 2012.  (*See* Reply to Response to Mot. to Dismiss (#21); *see also* Minute Order

3    in Chambers (#18)).

4    **II.      The Amended Complaint**

5        Plaintiffs' claims stem from the legal representation Defendants rendered, which

6    allegedly spanned from December of 2000 until the time Plaintiffs commenced this action.

7    (Am. Compl. (#19) at ¶ 12).  RBSL represented Arndell, individually, in several matters.  (*Id.*)

8    RBSL also represented Hidden Meadows Company ("HMC") and Jess Arndell Construction

9    Company ("JACC") in several matters over that same time span.  (*Id.*).  Plaintiffs are the

10   assignees of all claims that HMC and JACC may have had against Defendants.  (*Id.* at ¶ 2).

11       In 2004, HMC and JACC completed a 101-single-family-home-project called the Hidden

12   Meadows Housing Development ("the Project").  (*Id.* at ¶ 12).  Stantec a/k/a SEA ("SEA")

13   began as the Project's civil engineer; Summit Engineering, Inc. later took over because of

14   SEA's "defective" performance.  (*Id.* at ¶ 13).  During construction, the county banned the

15   import of fill soil to the construction site.  (*Id.*).  Based upon SEA's recommendation, HMC and

16   JACC pulled soil from a slough which was located on-site to complete mass grading for the

17   Project.  (*Id.*).  However, in the course of construction, it became clear that the slough soil was

18   of insufficient quality and quantity to comply with geotechnical report recommendations.  (*Id.*

19   at ¶ 14).  SEA recommended borrowing more slough soil, eventually creating an unplanned

20   17-acre retention pond.  (*Id.*).  Despite these efforts, the Project did not have adequate soil

21   to support the foundations of some homes.  (*Id.*).  SEA allegedly knew of, and intentionally

22   concealed, the deficiencies of their report, and as a result of this fraudulent conduct, HMC

23   incurred over $11,000,000 in debt to JACC to cure the soil deficiencies.  (*Id.* at ¶¶ 14, 15).

24   Based on these facts, RBSL brought suit against SEA on behalf of HMC (the "Dirt Suit") to

25   recover the $11,000,000.  (*Id.*).

26       Simons, supervised by co-defendant Robison, assured Arndell that the case against

27   SEA was quite strong, damages were easily verified, the fraud was obvious, and that SEA had

28   failed to recommend installing area drains on each lot which would have mitigated some of

3

the problems related to the soil deficiency. (*Id.* at ¶ 16). Indeed, SEA's failures led to lawsuits from 71 homeowners (the "Defect Suit") which eventually cost Plaintiffs, HMC, and JACC an additional $10,000,000. (*Id.*).

Two days before trial in the Dirt Suit, Arndell attended a settlement conference with Simons. (*Id.* at ¶ 17). SEA initially offered $70,000 to settle the $11,000,000 claim. (*Id.*). Arndell was "shocked" when Simons recommended that he accept. (*Id.*). Simons explained that Arndell must accept because he owed RBSL $90,000. (*Id.*). Further, RBSL was not prepared for trial and would require an additional $250,000 in attorneys' fees to cover trial expenses. (*Id.*). SEA eventually raised its settlement offer to $1,450,000, which Arndell refused, knowing it would mean "certain bankruptcy for himself personally as well as HMC and JACC." (*Id.*). Arndell claims that Simons applied inappropriate pressure while attempting to secure his consent to settlement, including having Robison call Arndell's wife without Arndell's permission. (*Id.*).

Arndell left the settlement conference believing he had refused SEA's $1,450,000 offer despite Simons' strong recommendation to the contrary. (*Id.* at ¶ 18). Roughly 30 days later, Arndell met with Simons and Robison at RBSL's office. (*Id.*). At that meeting, "Arndell was unequivocally informed" that RBSL had accepted SEA's settlement offer without his authorization. (*Id.* at ¶ 24). Simons and Robison also told Arndell that they were still unprepared for trial, and, in fact, the case had been taken off the calendar as a result of the settlement agreement. (*Id.* at ¶ 18). At this meeting, Arndell learned that as a part of the settlement agreement, HMC had to indemnify SEA against any future claims related to the Project. (*Id.* at ¶ 20). RBSL assured Arndell that such an indemnification would have little impact because HMC was judgment proof, and the indemnification would not extend to JACC or Arndell, as an individual. (*Id.*). Simons further assured Arndell that he would defend against any application of that indemnity to JACC and Arndell, personally. (*Id.*). At the time, RBSL and Arndell were aware of pending litigation involving homeowners from the Project which, in the absence of an indemnity agreement, would likely involve cross-claims by Arndell, HMC, and JACC against SEA. (*Id.*). Arndell ultimately signed the Dirt Suit settlement

4

1 | agreement, which included the above-described indemnification clause, on February 26, 2003.
2 | (*Id.* at ¶ 21).

3 |      In November 2003, HMC and JACC began receiving notices from homeowners at the
4 | Project about construction defects.  (*Id.*).  Eventually, 71 homeowners from the Project filed
5 | construction-defect-type suits (the "Defect Suit").  (*Id.*).  During the course of the Defect Suit,
6 | the court issued a ruling, aided in part by Simons' testimony, that Arndell, JACC, and HMC
7 | were alter egos of one another.  (*Id.*).  As a result, the indemnification agreement between
8 | HMC and SEA now included Arndell and JACC as indemnifiers, and Arndell and JACC could
9 | no longer pursue cross-claims against SEA in the Defect Suit.  (*Id.*).

10 |      As a direct result of the alter ego ruling, JACC and Arndell paid out more than
11 | $5,000,000 in claims which SEA was liable for.  (*Id.* at ¶ 22).  The financial strain of this chain
12 | of events led to the revocation of JACC's contractor's license and its present state of
13 | insolvency.  (*Id.*).  Arndell's personal income went from $200,000 annually to "virtually
14 | nothing."  (*Id.*).

15 |      Plaintiffs' Amended Complaint alleges that RBSL had a serious conflict of interest when
16 | it represented Arndell, JACC, and HMC simultaneously, especially because HMC owed JACC
17 | millions of dollars.  (*Id.* at ¶ 23).  Additionally, Plaintiffs allege that RBSL used undue influence
18 | while self-dealing at the Dirt Suit settlement conference.  (*Id.* at ¶¶ 23, 25).  Plaintiffs assert
19 | that RBSL has denied all of Arndell's requests for copies of his files from RBSL and an
20 | accounting of attorneys' fees paid out by Arndell, HMC, and JACC.  (*Id.* at ¶ 29).  Arndell
21 | claims he did not learn of RBSL's "egregious conduct" until he consulted with independent
22 | counsel.  (*Id.* at ¶ 28).

23 |      In total, Plaintiffs' Amended Complaint contains three counts against Defendants: (1)
24 | legal malpractice, (2) legal malpractice with a request for an accounting, and (3) exemplary
25 | damages.  (*Id.* at ¶¶ 30-52).

26 | **LEGAL STANDARD**

27 |      "The purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal
28 | sufficiency of complaints without subjecting themselves to discovery."  *Rutman Wine Co. v.*

1
2
3
4

*E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974)).

5
6
7
8
9
10

        In evaluating a motion to dismiss, the Court must accept all well-pled facts as true; however, the Court should not accept legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  To survive a motion to dismiss, those well-pled facts must allow the Court to reasonably infer that the defendant is liable under the stated claim.  *Id.* at 678-79.

11
12
13
14
15
16
17
18
19

        If the Court dismisses a complaint, it must decide whether to do so with or without prejudice.  "[L]eave to amend 'shall be freely given when justice so requires.'"  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) (quoting Fed. R. Civ. P. 15(a)).  If the Court dismisses with prejudice, it should consider a list of relevant factors[3] and articulate why such dismissal is appropriate.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Generally speaking, "[a] district court does not err in denying leave to amend where the amendment would be futile."  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (citing *Reddy v. Litton Indus.,* 912 F.2d 291, 296 (9th Cir. 1990)).

20

**DISCUSSION**

21

**I.    Plaintiffs Have Failed to Bring a Timely Claim for Legal Malpractice**

22
23
24

        Defendants have moved to dismiss the legal malpractice claim against them on the basis that it is barred by N.R.S. § 11.207, the relevant statute of limitations for legal

25
26
27
28

---

        [3] The relevant factors are "undue delay, bad faith or dilatory motive on the part of" the party seeking leave to amend, "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment," and "futility of amendment." *Foman*, 371 U.S. at 182.

malpractice claims.  (Mot. to Dismiss (#17) at 2-3).  Nevada Revised Statute § 11.207(1) requires a plaintiff to bring a legal malpractice claim "within 4 years after the plaintiff sustains damage or within 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action, whichever occurs earlier."  Nev. Rev. Stat. § 11.207(1).

The Nevada Legislature amended N.R.S. § 11.207 in 1997.[4]  Before the 1997 amendment, Nevada common law tolled the statute of limitations until the end of the ongoing litigation in which the legal malpractice occurred.  *K.J.B., Inc. v. Drakulich*, 811 P.2d 1305, 1306 (Nev. 1991).  The Court recently found that this rule was not likely overruled by the 1997 amendment, noting that although the Nevada Supreme Court has never directly addressed the effect of the 1997 amendment on this court-created rule, it "has continued to re-state the rule" in "multiple cases" since the 1997 amendment.  *New Albertson's, Inc. v. Brady, Vorwerck, Ryder & Caspino*, 2012 WL 1044305, at *5 (D. Nev. Mar. 28, 2012) (citing *Kopicko v. Young*, 971 P.2d 789 (Nev. 1998) and *Hewitt v. Allen*, 43 P.3d 345 (Nev. 2002)).  Therefore, the common law rule likely has not been abrogated by the 1997 amendment and a claim for legal malpractice begins to run at the end of the litigation in which the legal malpractice occurred.

Plaintiffs allege that Defendants engaged in malpractice because on January 4, 2003 Simons told Arndell he was not prepared to try the Dirt Suit which was scheduled to begin in

---

[4] The original version of this statute, adopted in 1981, required the plaintiff to bring a claim within *four years* of the date he discovered the malpractice *and* sustained damage. *K.J.B., Inc. v. Drakulich*, 811 P.2d 1305, 1306 n.2 (Nev. 1991) (quoting text of the pre-1997 version of N.R.S. § 11.207(1)).  In 1997 the Nevada Legislature amended N.R.S. § 11.207(1), making two significant changes: (a) the statute of limitations now runs from *either* the date the plaintiff discovered the malpractice *or* the date the plaintiff sustained injury, and (b) the statute of limitations now expires *two years after discovery* or four years after injury, whichever is sooner.  *Compare* Nev. Rev. Stat. § 11.207(1), *with Drakulich*, 811 P.2d at 1306 n.2 (containing the full text of the pre-1997 version of N.R.S. § 11.207(1)).

two days, Simons recommended that Arndell settle a $11,000,000 lawsuit for $70,000 to cover $90,000 in outstanding attorneys' fees, and Robison applied inappropriate pressure by contacting Arndell's wife to encourage settlement. (Am. Compl. (#19) at ¶ 17). Plaintiffs' also allege that on or about February 3, 2003, "Arndell was unequivocally informed" that RBSL had accepted a settlement offer without his consent, had taken the Dirt Suit off the trial calendar without his knowledge, was still unprepared for trial, and misinformed Arndell about the effect of an indemnification clause in the settlement agreement. (*Id.* at ¶¶ 18, 20, 24).

Under Nevada common law the statute of limitations is tolled during the ongoing litigation in which the alleged malpractice occurred. *See Drakulich* 811 P.2d at 1306. The malpractice here allegedly occurred during the Dirt Suit, and accordingly the statute of limitations began to run on February 26, 2003, which was the date the Dirt Suit settlement agreement was signed, ending the litigation. (Am. Compl. (#19) at ¶ 21).

Additionally, the statute of limitations began to run on February 26, 2003 because that was the date Plaintiffs were damaged from the legal malpractice. The statute of limitations runs from either the date a plaintiff discovers the malpractice or from the date the plaintiff sustains damage, whichever occurs earlier. Nev. Rev. Stat. 11.207(1). Plaintiffs argue that they were unaware of Defendants' "egregious conduct" until Arndell contacted independent counsel, and therefore, according to Plaintiffs, the statute of limitations should not begin to run until this date. (*Id.* at ¶ 24, 28). Even if the Court were to accept Plaintiffs' somewhat incredible argument that they did not discover Defendants' conduct until they consulted with independent counsel, they sustained damages on February 26, 2003 upon signing the Dirt Suit settlement agreement. According to Plaintiffs' Amended Complaint, they sustained nearly $10,000,000 in damage because they ceded a $11,000,000 claim in exchange for $1,450,000 and agreed to an indemnification clause which limited later cross-claims against SEA. (*Id.* at ¶¶ 23, 26). Pursuant to N.R.S. § 11.207(1), the statute of limitations expires two years after discovery of the cause of action or four years after injury, "*whichever occurs earlier.*" Nev. Rev. Stat. § 11.207(1) (emphasis added). Therefore, even if the Court were to find that Plaintiffs discovered the malpractice much later, the statute of limitations on this claim

8

1   indisputably expired on February 26, 2007, four years after Plaintiffs sustained damage.

2        Plaintiffs' Amended Complaint establishes that the statute of limitations here, pursuant

3   to N.R.S. § 11.207(1) and Nevada common law, likely expired on February 26, 2005 and

4   indisputably expired on February 26, 2007.

5   **II.    Tolling Based on Concealment Does Not Apply**

6        Plaintiffs have also failed to plead facts which demonstrate that the Court should toll

7   the statute of limitations for periods of concealment.

8        The time restrictions promulgated in N.R.S. § 11.207(1) are "tolled for any period during

9   which the attorney . . . conceals any act, error or omission upon which the action is founded."

10  Nev. Rev. Stat. § 11.207(2).   The Nevada Supreme Court has not clarified what exactly

11  constitutes concealment under N.R.S. § 11.207(2), but it has clearly defined concealment in

12  the context of medical malpractice: concealment occurs when (1) the defendant intentionally

13  withheld information, and (2) this withholding would have hindered a reasonably diligent

14  plaintiff from timely filing suit.[5]  *Winn v. Sunrise Hosp. & Med. Ctr.*, 277 P.3d 458, 464 (Nev.

15  2012).

16

17        [5] Using the medical malpractice standard for concealment in a legal malpractice case

18  makes sense for three reasons.  First, the general structure of the medical malpractice and

19  legal malpractice statutes are very much alike: both statutes begin running from the date of

20  discovery *or* injury, both grant a longer limitation period from the date of injury and a shorter

21  period from the date of discovery, and both mandate that the statute of limitations expires on

22  whichever date occurs first.  *Compare* Nev. Rev. Stat. § 41A.097(2), *with* Nev. Rev. Stat. §

23  11.207(1).  Second, the sections discussing concealment are nearly identical.  *Compare* Nev.

24  Rev. Stat. § 41A.097(3), *with* Nev. Rev. Stat. § 11.207(2).  Finally, the 1997 amendment to

25  N.R.S. § 11.207 was requested "to make time limits for malpractice suits against accountants,

26  attorneys, and veterinarians consistent with other professions in Nevada."  Nev. Leg. 69th

27  Sess., Summary of Legis. 61-62 (1997), *available at*

28  http://www.leg.state.nv.us/Division/Research/Publications/SoL/1997SoL.pdf.

9

Although Plaintiffs have sufficiently pled the first element of concealment—that Defendants intentionally withheld information by refusing to provide a full accounting along with their client file and by representing Plaintiffs, HMC, and JACC without disclosing they had a clear conflict of interest—the allegations in Plaintiffs' Amended Complaint are insufficient to support the second element of concealment: that Defendants' withholding would have hindered a reasonably diligent plaintiff from timely filing suit.  The information concealed here is immaterial to Plaintiffs' ability to timely file.  Plaintiffs have requested their client file and an accounting to check for any instances of double-billing.  (*Id.* at ¶ 29).  At best, this information could expand the extent of damages or create a new cause of action, but it would not prevent a reasonably diligent plaintiff from bringing a malpractice claim related to the Dirt Suit litigation.  Additionally, a reasonably diligent plaintiff would have filed a timely suit even without Defendants disclosing the purported conflict of interest.  Plaintiffs' Amended Complaint alleges that Defendants caused them to lose nearly $10,000,000 upon signing the Dirt Suit settlement agreement.  (*Id.* at ¶ 16).  A reasonably diligent plaintiff would not wait for his counsel to admit a conflict of interest before pursuing a multi-million dollar claim for legal malpractice.  (*Id.* at ¶¶ 17-18, 20-21, 24).  Plaintiffs have consequently failed to sufficiently plead concealment because their allegations do not demonstrate that a reasonably diligent plaintiff in their circumstances would have been prevented from timely filing suit.

Plaintiffs have therefore failed to state a claim for legal malpractice.  Amendment here would be futile because Plaintiffs' legal malpractice claim is time barred by Nevada law.  As such, the Court dismisses the legal malpractice claim with prejudice.

**III.    Plaintiffs' Claims for Legal Malpractice with a Request for an Accounting and Exemplary Damages**

The Court has already ordered Plaintiffs to present a single, omnibus claim for legal malpractice. (Order (#15) at 5-6).  Count Two of Plaintiffs' Amended Complaint, "Request for an Accounting (Legal Malpractice)," alleges that during the course of an attorney-client relationship, Defendants breached certain duties (specifically, the duty to provide copies of the client file and an accounting of fees upon request), and that the breach has somehow

10

prejudiced the client.  (Am. Compl. (#19) at ¶¶ 43-50).  This is a second legal malpractice claim in direct contravention of the Court's prior order to consolidate their nine-count, original Complaint into <u>one</u> claim for legal malpractice.  (Order (#15) at 5-6).

Count Three of Plaintiffs' Amended Complaint, "Exemplary Damages," also contravenes the Court's earlier order.  (*Id.* at 5).  In that order, the Court directed Plaintiffs to present exemplary damages as a form of relief sought and not as a separate cause of action.  (*Id.*). Furthermore, because Plaintiffs' legal malpractice claim is time-barred, the Court cannot indulge Plaintiffs' request for exemplary damages, as it is not tied to any legally cognizable, substantive claim.

As Counts Two and Three of Plaintiffs' Amended Complaint do not comply with this Court's prior order and fail to state a claim, these counts are accordingly dismissed.  Since any amended complaint containing these counts inherently contradicts the Court's prior order, Plaintiffs are not granted leave to amend.  (*See id.* at 5-6; *see also DeSoto*, 957 F.2d at 658).

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendants' Motion to Dismiss Based Upon N.R.S. § 11.207 (#17) as to Count One (legal malpractice) is GRANTED, with prejudice.

IT IS FURTHER ORDERED that Counts Two (legal malpractice with a request for an accounting) and Three (exemplary damages) are DISMISSED, without leave to amend.

DATED: `This 6th day of September, 2012.

_____
United States District Judge